**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLIE CASTILLO, | : | Civil No. 1:22-CV-00417 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECTION OFFICER O'HAINE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a motion to dismiss the complaint filed by all Defendants in the above captioned action.  (Doc. 14.)  Plaintiff Charlie Castillo ("Plaintiff") is an inmate currently housed at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"), and is self-represented in this 42 U.S.C. § 1983 action.  For the reasons discussed below, Defendants' motion will be granted.  Plaintiff's Sixth Amendment claims will be dismissed with prejudice.  Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims raised will be dismissed without prejudice, and Plaintiff will be given leave to amend his complaint.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed his complaint on March 31, 2022.  (Doc. 1.)  His allegations revolve around an allegedly falsified misconduct brought against him following a stay at Geisinger Wyoming Valley Hospital.  (*Id.*)  He names five defendants: (1) Corrections Officer O'Haine ("O'Haine"); (2) Corrections Officer Chi Hany ("Chi

1

Hany"); (3) Superintendent Kevin Ransom ("Ransom"); (4) Assistant

Superintendent Nicole Hogan ("Hogan"); and (5) Hearing Examiner CJ McKeown

("McKeown").  (*Id.*, pp. 2–4.)[1]

Specifically, Plaintiff alleges that on November 10, 2021, he was transferred

to a private hospital from SCI-Dallas for heart problems.  (*Id.*, p. 6.)  He alleges

that while being wheeled into the operating room, Defendant O'Haine took his

medical file from a nurse named Angi or Angela ("Nurse Angela").  (*Id.*)  Plaintiff

then stated that Defendant O'Haine began to go through and read his medical file.

(*Id.*)  Plaintiff alleges that he told Nurse Angela that Defendant O'Haine was not

allowed to read his medical files, and she took the file away from Defendant

O'Haine.  (*Id.*)  Plaintiff reports that Defendant O'Haine then became "visibly"

upset with him.  (*Id.*)  Defendant O'Haine asked Plaintiff about his sentence, and

Plaintiff responded that he was serving 27 to 60 months, but he was up for parole

in March of 2022.  (Doc. 1-1, p. 1.)  Defendant O'Haine then asked what block

Plaintiff was housed in, and Plaintiff stated he was housed in A-Block.  (*Id.*)

Defendant O'Haine then told him that A-Block was an honor block for veterans

and a safety block for people with pedophile-related charges.  (*Id.*)  Plaintiff

allegedly told Defendant O'Haine that he was a not a veteran or a pedophile.  (*Id.*)

Defendant O'Haine then allegedly stated that he would make sure that Plaintiff

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

would go to the hold once he got back, that he would not make parole, and that he would be returned to B-Block, where they "don't like pedophil[es] and the[y] stab them." (*Id.*) Plaintiff alleges that he wrote a grievance regarding this exchange, but his grievances "just kept being rejected by Ms. Hogan assistant superintendent." (*Id.*)

Plaintiff next alleges that Defendant O'Haine fabricated a misconduct against him stating that Plaintiff asked Nurse Angela "Where is my fucking ice," while being wheeled into the recovery room. (*Id.*, p. 2.) He also alleged that the misconduct alleged that Plaintiff was so loud while in the recovery room that a nurse named Karen from the room "EP #3" came running in to see what was happening. (*Id.*) Nurse Karen was replaced at shift change by Nurse Carly. (*Id.*) Plaintiff alleges that this was not accurate, and he was very respectful to the nurses while at the hospital. (*Id.*)

Once Plaintiff returned to SCI-Dallas, he reports that he was given a misbehavior report for the above fabrications by Defendant O'Haine and went to a hearing held before Defendant McKeown acting as the hearing examiner on November 17, 2021. (*Id.*) Plaintiff reports that he told Defendant McKeown that the misconduct was fabricated and asked him to call Nurse Karen and Nurse Carly to provide testimony about his conduct while in room "EP #3." (*Id.*) Defendant McKeown denied Plaintiff's request. (*Id.*, p. 3.) Plaintiff further alleges that

Defendant O'Haine did not appear at the hearing, and he was not allowed to question Defendant Chi Hany who did attend the hearing.  (*Id*.)  Plaintiff further alleges that he pleaded not guilty at the hearing.  (*Id*.)  He further alleges that his request for medical records was repeatedly denied.  (*Id*., p. 4.)  He states that as a result of the hearing, he was given 30 days in the hole.  (Doc. 1-1, p. 3.)  Following an appeal, his time in the hole was reduced to 15 days followed by 15 days of cell restriction.  (*Id*.)  Plaintiff also states that his institutional pay was taken away as a result of this misconduct.  (Doc. 1, p. 6.)

Plaintiff alleges that he was denied parole in March of 2022 and was told that the denial by the parole board was due to his misconduct and the negative recommendation from the superintendent due to this misconduct.  (*Id*.)  Plaintiff alleges that the misconduct addressed above was the only misconduct he ever received.  (Doc. 1-1, p. 4.)

Plaintiff reasserts his innocence in regards to the misconduct and asserts that this innocence could be established by the medical file from the hospital and by calling the nurses who attended to him.  (*Id*.)  Plaintiff further states that when he returned to the hospital, the doctor checked his medical files and confirmed that these records do not support the facts alleged in the misconduct.  (*Id*.)  The doctor then provided Plaintiff the phone number to a patient advocate.  (*Id*.)

Plaintiff asserts that all of these facts demonstrate that the Defendants violated his Fourth, Sixth, Eighth, and Fourteenth Amendment rights. (*Id.*)

The complaint was served on Defendants on April 5, 2021. (Doc. 9.) Defendants filed a motion to dismiss for failure to state a claim and a brief in support on June 6, 2022. (Docs. 14, 15.) Plaintiff responded by filing a brief in opposition to the motion on June 23, 2022. (Doc. 17.) Defendants filed a reply on June 28, 2022. (Doc. 18.) Plaintiff then filed additional exhibits in support of his brief in opposition and a sur-reply to Defendants' reply brief. (Docs. 19, 20.)[2] The pending motion to dismiss is ripe to be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Dallas, located in Luzerne County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

---

[2] Plaintiff failed to request leave of the court for these additional filings. *See* Local Rules 7.7. Therefore, the court did not consider them when making its determination.

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

Plaintiff's complaint raises claims under the Fourth, Sixth, Eighth, and Fourteenth Amendments.  (Doc. 1, p. 3; Doc. 1-1, p. 6.)  However, he failed to specify which claims were raised against which defendants.  The court finds that the complaint fails to allege facts that support any of these claims and will address each claim in turn without addressing how they pertain to each Defendant.

**A. The Fourth Amendment Claims Will Be Dismissed.**

Plaintiff alleges that Defendants violated his Fourth Amendment rights. (Doc. 1, p. 3.)  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security.  *Bistrian*, 696 F.3d at 373; *see also Bell v. Wolfish, 441* U.S. 441, 558–60 (1979).  Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.  *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

Even liberally construed, Plaintiff's complaint fails to allege any conduct on the part of Defendants that could be considered a violation of the Fourth Amendment under this standard.  Therefore, the Fourth Amended claim raised against Defendants will be dismissed without prejudice.

### B. The Sixth Amendment Claims Will Be Dismissed With Prejudice.

Plaintiff alleges that his Sixth Amendment rights were violated.  (Doc. 1, p. 3.)  The Sixth Amendment to the Constitution provides certain criminal procedural rights:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI.

Plaintiff's allegations surround the procedural aspects of his misconduct hearing: that he was not allowed to call witnesses; and that he was denied the opportunity to cross-examine witnesses.  These appear to be among the rights conveyed in the Sixth Amendment.  However, to the extent that Plaintiff believes his Sixth Amendment rights were violated during his prison disciplinary proceedings, his claim lacks merit "because the Sixth Amendment guarantees apply only to criminal prosecutions and prison disciplinary proceedings are not

criminal prosecutions within the meaning of the Sixth Amendment." *See Smith v. Holt*, No. 4:CV-05-1889, 2006 WL 485352, at *2 (M.D. Pa. Feb. 28, 2006) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Kirby v. Illinois*, 406 U.S. 682, 690 (1972)).  Therefore, all Sixth Amendment claims will be dismissed with prejudice.

### C. The Eighth Amendment Claims Will Be Dismissed.

Plaintiff raises an Eighth Amendment cruel and unusual punishment claim. (Doc. 1, p. 3.)  The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"  *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell*,

833 F.3d at 335).  Such a claim contains two requirements: an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A prisoner asserting a claim that conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk."  *Farmer*, 511 U.S. at 834, 844–45.

Here, the complaint fails to allege the objective requirement of a cruel and unusual punishment claim: that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.  Instead, it merely alleges that he unfairly spent fifteen days in the hole and fifteen days on cell restriction.  (Doc. 1, p. 6.)  Nothing in the complaint addresses the conditions of his confinement.  Therefore, the cruel and unusual punishment claim will be dismissed without prejudice.

### D. The Fourteenth Amendment Claims Will Be Dismissed.

The crux of Plaintiff's complaint are his claims that he was denied due process of law in violation of the Fourteenth Amendment in the course of the misconduct hearing and subsequent appeals.  (Doc. 1.)

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  *See* U.S. Const. amend. XIV.  With respect to a procedural due process claim, the court

observes that "'[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies.'" *Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431, 437–38 (3d Cir. 2000) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (alteration added)).  In order "'[t]o establish [a state-created liberty interest under the Fourteenth Amendment] in the conditions of confinement context, courts generally require a showing that the alleged liberty interest is substantial.'" *See id*. at 438 (quoting *Williams v. Secretary Pennsylvania Department of Corrections*, 848 F.3d 549, 559 (3d Cir. 2017) (alterations in original)).  Thus, "[t]o rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See id*. (emphasis omitted).

Applying these principles here, the court finds that Plaintiff's complaint fails to identify a legally cognizable liberty interest concerning his freedom from restraint.  *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (explaining that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [b]ut these interests will be generally limited to freedom of restraint, which while not exceeding the sentence in such an unexpected manner as to give to protection by the Due Process by its own force . . .

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011). Read liberally, the complaint attempts to establish liberty interests in the right to parole, the right to his lost wages, and the right to be free of restricted housing.

### 1.  The Right to Parole

The court finds that the right to parole under the sentencing scheme of the Commonwealth of Pennsylvania is not a liberty interest, unlike the right to good time credit under other sentencing regulations or statutes.

Pennsylvania uses an indeterminate sentencing structure, under which a sentencing court imposes both a minimum and a maximum term.  *Commonwealth v. Kleinicke*, 895 A.2d 562 (Pa. Super. 2006).  "Once the [prisoner] completes the minimum term of incarceration, it is up to the Parole Board to determine when (and if) [he] will be released before serving the maximum sentence imposed by the court."  *Fordham v. Penn. Bd. of Probation & Parole*, No. 4:10–cv–480, 2010 WL 2428647, at *2 (M.D. Pa. June 15, 2010).  The time the defendant will actually serve in custody is indeterminate at the moment of sentencing because the

defendant may ultimately serve only the minimum, the maximum, or any sentence between the two.

This is in contrast to other sentencing structures, which include good-time credits, which has been deemed as a protected liberty interest. *Wolff*, 418 U.S. 539. Good time credits are guaranteed by statute and can be calculated at the time of sentencing. Thus, the denial of good-time credits may be subject to due process challenges. *Id*. at 557.

Since there is no right to serving only the minimum sentence under the Pennsylvania sentencing structure, and the sentencing structure only provides the potential for serving the minimum sentence at the discretion of the Parole Board, this is not sufficient to create a liberty interest. Therefore, Plaintiff's allegations regarding his right to parole does not create a liberty interest.

## 2. The Right to Lost Wages

Plaintiff's allegations include the statement that his "institutional pay was take[n] away." (Doc. 1, p. 6.) He requests money damages for the "mental anguish" and "emotional suffering" for losing the "jail pay" for the time spent in the hole and under cell restriction. (Doc. 1, p. 6.) Defendant characterizes these allegations as the loss of his job and resulting wages. (Doc. 15, p. 11.) Reading the complaint as a whole, it appears Plaintiff is raising a claim for lost wages, i.e. wages he did not get to earn because of his time in restricted housing, and not for

an unlawful taking of funds directly from his inmate account.  The court makes this

distinction because there is no property interest to maintaining an inmate's job, but

there is a property interest in the funds in an inmate account.  *Burns v. PA Dept. of*

*Corrections*, 642, F.3d 163, 171 (3d Cir. 2011).  Therefore, any Fourteenth

Amendment claims raised as result of the lost wages due to a failure to attend work

because of his restricted housing are dismissed.  In the event that the court has

misconstrued Plaintiff's claim, and he is asserting that funds were taken from his

inmate account, Plaintiff may renew his Fourteenth Amendment claims and allege

such facts with specificity in an amended complaint.

### 3.  The Right to Be Free of Restricted Housing

Plaintiff's due process claim also seeks damages for the time spent in

restricted housing.  (Doc. 1, p. 6.)  However, the Third Circuit has "held that

confinement in administrative or punitive segregation will rarely be sufficient,

without more, to establish the kind of 'atypical' deprivation of prison life necessary

to implicate a liberty interest."  *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir.

2002) (""[p]rison disciplinary proceedings may . . . constitute a denial of due

process in the context of a civil rights action under § 1983 when they are instituted

for the sole purpose of retaliating against an inmate for his/her exercise of a

constitutional right.").  As addressed above, Plaintiff's complaint has not alleged

that Defendant O'Haine's alleged conduct was done in retaliation for exercising a

constitutionally right.  Therefore, the right to be free of restricted housing is not a liberty interest, and Plaintiff's Fourteenth Amendment claim will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted. The Sixth Amendment claims will be dismissed with prejudice.  The Fourth, Eighth, and Fourteenth Amendment claims against Defendants will be dismissed without prejudice

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his second amended complaint and use the docket number assigned to this case.  Should Plaintiff fail to timely file an amended complaint within thirty days, the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  February 7, 2022