**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLIE CASTILLO, | : | Civil No. 1:22-CV-00417 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECTION OFFICER O'HAINE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendants' motion to dismiss the amended complaint in the above captioned action pursuant to Fed. R. Civ. P. 12(b)(b)(6).  (Doc. 27.) Plaintiff Charlie Castillo ("Plaintiff") is an inmate currently housed at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"), and is self-represented in this 42 U.S.C. § 1983 action.  For the reasons discussed below, Defendants' motion will be granted in part and denied in part.  Plaintiff's First Amendment retaliation claim and Fourteenth Amendment violation of privacy claim against Defendant O'Haine will proceed, but the remaining claims will be dismissed.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his initial complaint on March 31, 2022.  (Doc. 1.)  His allegations revolved around an allegedly falsified misconduct brought against him following a stay at Geisinger Wyoming Valley Hospital.  (*Id.*)  He named five

defendants: (1) Corrections Officer O'Haine ("O'Haine"); (2) Corrections Officer Chi Hany ("Chi Hany"); (3) Superintendent Kevin Ransom ("Ransom"); (4) Assistant Superintendent Nicole Hogan ("Hogan"); and (5) Hearing Examiner CJ McKeown ("McKeown").  (*Id.*, pp. 2–4.)[1]  Plaintiff raised Fourth, Sixth, Eighth, and Fourteenth Amendment claims.  (*Id.*)

Defendants filed a motion to dismiss the complaint on June 6, 2022. Following briefing, the court entered an order granting the motion.  (Docs. 21, 22.) The court dismissed the Sixth Amendment claims with prejudice and the Fourth, Eighth, and Fourteenth Amendment claims without prejudice.  (Doc. 22.)  The court granted Plaintiff leave to file an amended complaint.  (*Id.*)

Plaintiff filed an amended complaint on February 23, 2023.  (Doc. 27.) Specifically, in the amended complaint Plaintiff alleges that on November 10, 2021, he was transferred to a private hospital from SCI-Dallas for heart problems. (*Id.*, p. 4.)  He alleges that while being wheeled into the operating room, Defendant O'Haine took his medical file from a nurse named Angie or Angela ("Nurse Angela").  (*Id.*)  Plaintiff then stated that Defendant O'Haine began to go through and read his medical file.  (*Id.*)  Plaintiff alleges that he told Nurse Angela that Defendant O'Haine was not allowed to read his medical files, and she took the file away from Defendant O'Haine, but not before he read a couple of pages.  (*Id.*)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Plaintiff reports that Defendant O'Haine then became "visibly upset" with him and "began to interrogate me about my status at SCI Dallas." (*Id.*) Defendant O'Haine asked Plaintiff about his sentence, and Plaintiff responded that he was serving 27 to 60 months, but he was up for parole in March of 2022. (*Id.*, p. 7.) Defendant O'Haine then asked what block Plaintiff was housed in, and Plaintiff stated he was housed in A-Block. (*Id.*) Defendant O'Haine then told him that A-Block was an honor block for veterans and a safety block for people with pedophile related charges. (*Id.*) Plaintiff allegedly told Defendant O'Haine that he was not a veteran or a pedophile. (*Id.*) Defendant O'Haine then allegedly stated that he would make sure that Plaintiff would go to the hold once he got back, that he would not make parole, and that he would be returned to B-Block, where they "don't like [pedophiles] and they stab inmates." (*Id.*) Plaintiff alleges that he wrote a grievance regarding this exchange, but his grievance was denied. (*Id.*)

Plaintiff alleges that Defendant O'Haine then used the information Plaintiff provided to write up a false report "to retaliate against me for exercising my 1st Amendment regarding my medical files." (*Id.*, p. 4.) Specifically, he alleges that Defendant O'Haine stated that Plaintiff asked Nurse Angela "Where is my fucking ice," while being wheeled into the recovery room. (*Id.*, p. 7.) He also alleged that the misconduct alleged that Plaintiff was so loud while in the recovery room it caused other nurses to come into the room to investigate what was happening.

(*Id.*)  Plaintiff alleges that this was not accurate, and he was very respectful to the nurses while at the hospital.  (*Id.*)

Once Plaintiff returned to SCI-Dallas, he reports that he was given a misconduct by Defendant O'Haine and went to a hearing held before Defendant McKeown.  (*Id.*, pp. 7–8.)  Plaintiff reports that he told Defendant McKeown that the misconduct was fabricated and asked him to call witnesses and question Defendant Chi Hany.  (*Id.*, p. 8.)  Defendant McKeown denied Plaintiff's request, and stated that what Defendant O'Haine stated was the truth even though Defendant O'Haine did not attend the hearing.  (*Id.*)  Plaintiff further alleges that he pleaded not guilty at the hearing.  (*Id.*)  Plaintiff alleges that Defendant O'Haine stopped the hearing for 15 minutes and returned with Defendant Chi Hany before starting the hearing again.  (*Id.*)  Defendant Chi Hany then repeated Defendant O'Haine's false reports.  (*Id.*)

Plaintiff states that as a result of the hearing, he was given 30 days in disciplinary confinement.  (*Id.*)  Following an appeal, his time in the disciplinary confinement was reduced to 15 days followed by 15 days of cell restriction.  (*Id.*)  On appeal, Defendant Ransom refused to call any witnesses from outside the prison.  (*Id.*)

Plaintiff alleges that he filed multiple grievances and requested his medical records to show that he did not behave as Defendant O'Haine had alleged.  (*Id.*)

4

However, he alleges that Defendant Hogan denied these grievances for minor technicalities.  (*Id*.)

Plaintiff alleges that he was denied parole in March of 2022 due to his misconduct and the negative recommendation from the superintendent due to this misconduct.  (*Id*., pp. 8–9.)  Plaintiff alleges that the misconduct addressed above was the only misconduct he ever received.  (*Id*., p. 9.)

Plaintiff further states that when he returned to the hospital, the doctor checked his medical files and confirmed that these records do not support the facts alleged in the misconduct.  (*Id*., pp. 9–10.)  The doctor then provided Plaintiff the phone number to a patient advocate.  (*Id*., p. 10.)

Plaintiff asserts that Defendants O'Haine and Chi Hany violated his First, Fourth, Eighth, and Fourteenth Amendment rights, that Defendant McKeown violated his Eighth and Fourteenth Amendment rights, that Defendant Hogan violated his First Amendment rights, and that Defendant Ransom violated his First and Eighth Amendment rights.  (*Id*., pp. 5, 11–12.)

Defendants filed a motion to dismiss the amended complaint for failure to state a claim and a brief in support on March 6, 2023.  (Docs. 27, 28.)  Plaintiff responded by filing a brief in opposition to the motion on March 23, 2023.  (Doc. 32.)  The pending motion to dismiss is ripe to be addressed by the court.

JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §
1331, which allows a district court to exercise subject matter jurisdiction in civil
cases arising under the Constitution, laws, or treaties of the United States.  Venue
is proper in this district because the alleged acts and omissions giving rise to the
claims occurred at SCI-Dallas, located in Luzerne County, Pennsylvania, which is
located within this district.  *See* 28 U.S.C. § 118(b).

STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting
*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to
survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.
2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint
survives a motion to dismiss, a court identifies "the elements a plaintiff must plead
to state a claim for relief," disregards the allegations "that are no more than
conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.
*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.
2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which
affirmatively demonstrate that the plaintiff has no right to recover is properly
dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d
103, 106 (3d Cir. 2002).

**DISCUSSION**

Plaintiff's amended complaint raises claims under the First, Fourth, Eighth,
and Fourteenth Amendments. (Doc. 26.) The court will address each claim in
turn.

### A. Plaintiff's First Amendment Claims Will be Dismissed Except for the Retaliation Claim Against Defendants O'Haine.

Plaintiff alleges that Defendants O'Haine, Chi Hany, Hogan, and Ransom
violated his First Amendment rights. (Doc. 26, p. 5.) Plaintiff alleges that
Defendants O'Haine and Chi Hany violated his right to freedom of speech, that
Defendants O'Haine and Chi Hany retaliated against him for asserting his right to
keep his medical information private, and that Defendant Hogan violated his right
to free access to the courts. (Doc. 26, pp. 5, 11.) Plaintiff alleges that Defendant
Ransom violated his First Amendment rights, but fails to set forth any factual basis
for this assertion.

### 1.  Freedom of Speech

First, Plaintiff alleges that Defendants O'Haine and Chi Hany violated his right to freedom of speech protected by the First Amendment.  (Doc. 26, p. 12.) The First Amendment prohibits governmental action "abridging the freedom of speech."  U.S. Const., amend. I.  However, Plaintiff has not alleged any facts that state a freedom of speech violation, but rather the facts alleged relate to a claim for retaliation.  (Docs. 26, 32-4.)  Therefore, the court will dismiss the First Amendment freedom of speech claims against Defendants O'Haine and Chi Hany without prejudice.

### 2.  Retaliation

Plaintiff also alleges that Defendants O'Haine and Chi Hany violated his First Amendment rights by retaliating against him for asking that his medical records be kept private.  (Doc. 26, p. 12; Doc. 32-4, pp. 4–5.)  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Here, Plaintiff is alleging that he was being retaliated against for exerting the right to maintain the privacy of his medical records under the Health Insurance Portability and Accountability Act ("HIPAA") by informing the nurse that Defendant O'Haine was not authorized to look at his medical records. However, HIPAA is not a codification of a constitutionally right to privacy. First, "[t]here is no federal private right of action under HIPAA." *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011). The Fifth Circuit was the first court of appeals to address the issue of conferring privacy rights upon an individual and stated the following:

> HIPAA does not contain any express language conferring privacy rights upon a specific class of individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions. 42 U.S.C. § 1320d–1. HIPAA provides both civil and criminal penalties for improper disclosures of medical information. 42 U.S.C. §§ 1320d–5, d–6. However, HIPAA limits enforcement of the statute to the Secretary of Health and Human Services. *Id.* Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement. *Alexander,* 532 U.S. at 286–87, 121 S.Ct. 1511 ("The express provision of one method of enforcing [a statute] suggests Congress intended to preclude others.").

*Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). The Third Circuit adopted the Fifth Circuit's finding in *Acara* in 2019. *Johnson v. WPIC*, 782 Fed.Appx. 169, 171 (3d. Cir. 2019.) Since *Acara*, the Eleventh Circuit also refused to accept the argument that HIPPA codifies a constitutional right to privacy. *Sneed v. Pan*

*American Hosp.*, 370 Fed.Appx. 47, 50 (11th Cir. 2010). Most recently, the Fourth

Circuit refused to find a private cause of action under HIPAA by stating that "a

plaintiff seeking a remedy under § 1983 'must assert the violation of a federal

*right*, not merely a violation of federal *law*.'" *Payne v. Taslimi*, 998 F.3d 648, 660

(4th Cir. 2021) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). This

distinction between federal rights and federal laws further supports the conclusion

that HIPPA does not codify a constitutional right to privacy. The protections

created by HIPAA are not conferred upon individuals and are created under federal

statute, not the Constitution. Therefore, Plaintiff cannot succeed on the argument

that asserting his rights under HIPAA amounted to engaging in a constitutionally

protected activity.

      However, the discussion of HIPAA and medical records raises the issue of

what rights to privacy are available to prisoners and whether, outside of HIPAA,

Plaintiff had a constitutional right to privacy when it came to his medical records.

Liberally construing the complaint, it appears that Plaintiff is attempting raise his

right to privacy under the Fourth Amendment. (Doc. 26, p. 12.) However, the

Third Circuit has recognized that medical records are protected under the federal

privacy right under the Fourteenth Amendment. *Doe v. Delie*, 257 F.3d 309, 317

(3d Cir. 2001) (explaining that prison inmates retain a right to privacy in their

medical records that may be limited by "legitimate penological interests") (quoting

*Turner v. Safley*, 482 U.S. 78, 89 (1987)).  More specifically, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. . . [A prisoner's] constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security."  *Delie*, 257 F.3d at 317.  Indeed, "[i]nmates retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system."  *Id.* at 315 (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)).  Therefore, the court finds that Plaintiff has pleaded sufficient facts to meet the first prong of a retaliation claim against Defendant O'Haine for viewing his medical records in the context alleged in the amended complaint.

As to the remaining two prongs, Plaintiff alleges that Defendant O'Haine filed a false misconduct report against him in retaliation for Plaintiff objecting to Defendant O'Haine viewing his medical records.  Therefore, his allegations are sufficient to state a retaliation claim against Defendant O'Haine at the pleading stage.

However, Plaintiff has failed to plead a retaliation claim against Defendant Chi Hany as he was not involved in the constitutionally protected activity.  This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally

12

protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL

4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL

5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014);

*also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009)

("There is no apparent reason why [the moving defendants] would want to retaliate

against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*,

308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of

defendant on plaintiff's claim that he was retaliated against by a defendant who

was not the target of his protected activity).  Here, the complaint alleges that

Defendant O'Haine was the only individual who viewed Plaintiff's medical

records and that Plaintiff only objected to Defendant O'Haine continuing to read

his medical records.  Therefore, a retaliation claim has not been stated against

Defendant Chi Hany.

Plaintiff attempts to allege the existence of a conspiracy between Defendants

O'Haine and Chi Hany to retaliate against him, but this allegation also fails.  There

are three elements to a conspiracy claim under 42 U.S.C.  § 1983:

> (1) two or more persons conspire to deprive any person of
> [constitutional rights]; (2) one or more of the conspirators performs . .
> . any overt act in furtherance of the conspiracy; and (3) that overt act
> injures the plaintiff in his person or property or deprives the plaintiff of
> any right or privilege of a citizen of the United States, with the added
> gloss under § 1983 that the conspirators act 'under the color of state
> law.

*Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n. 15 (3d Cir. 2018) (internal citations omitted)).

After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, he "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). In the absence of direct proof, a plaintiff may rely on circumstantial evidence from which a factfinder can infer a "meeting of the minds" or an "understanding or agreement to conspire." *Jutrowski*, 904 F.3d at 294 n. 17. Here, Plaintiff has failed to allege a factual basis for the existence of an agreement. Therefore, he has not stated a retaliation claim against Defendant Chi Hany based on a conspiracy. As such, the retaliation claims against Defendant Chi Hany will be dismissed without prejudice.

### 3. Access to the Courts

Third, Plaintiff alleges that Defendant Hogan violated his First Amendment right protecting his access to the courts by denying his grievances for minor technicalities. (Doc. 26, p. 11.)

Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or

14

'arguable' underlying claim" and (2) they have no available remedy for the lost

claim other than the present denial of access action. *Rivera v. Monko*, 37 F.4th

909, 915 (3d Cir. 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.

2008)). Most significant is the nonfrivolous nature of the claim allegedly lost. The

lost claim must be "more than hope" in order to be deemed nonfrivolous.

*Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Here, Plaintiff fails to allege that he lost a chance to pursue any claim, let

alone a nonfrivolous claim, as the alleged issues raised in the denied grievances are

the subject of this action. Indeed, the allegation that Defendant Hogan denied his

repeated grievances about the misconduct hearing demonstrates that the filing of

the instant action was not precluded. As such, the First Amendment claim against

Defendant Hogan will be dismissed without prejudice.

### 4. Defendant Ransom

Plaintiff makes a general allegation that Defendant Ransom violated his First

Amendment rights, but then provides no alleged facts in support of this assertion.

(Doc. 26, pp. 5, 11.) Construing the complaint liberally, the court will address any

liability by Defendant Ransom in his role as a supervisor.

"[An individual government] defendant in a civil rights action must have

personal involvement in the alleged wrongdoing; liability cannot be predicated

solely on the operation of [respondent] superior. Personal involvement can be

shown through allegations of personal direction or of actual knowledge and acquiescence."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).  Therefore, absent any allegation of Defendant Ransom's personal involvement in the claimed violation of Plaintiff's First Amendment rights, this claim will be dismissed without prejudice.

### B. The Fourth Amendment Claims Will Be Dismissed.

Plaintiff alleges that Defendants O'Haine and Chi Hany violated his Fourth Amendment rights by viewing his medical records.  (Doc. 26, pp. 5, 12.)  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security.  *Bistrian*, 696 F.3d at 373; *see also Bell v. Wolfish, 441* U.S. 441, 558–60 (1979).  Rather, the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.  *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

16

Plaintiff argues that Defendant O'Haine violated his Fourth Amendment rights by looking at his medical records.  (Doc. 26, p. 12.)  However, as discussed above, the privacy of medical records is protected by the Fourteenth Amendment, and not the Fourth Amendment.  Therefore, Plaintiff's Fourth Amendment claims will be dismissed with prejudice.

Similarly, Plaintiff alleges that Defendant Chi Hany violated his Fourth Amendment rights to keep his medical files private.  (Doc. 26, p. 12.)  However, the privacy of medical records is protected by the Fourteenth Amendment, and not the Fourth Amendment.  Additionally, Plaintiff has failed to allege that Defendant Chi Hany was the individual who viewed his medical records.  Therefore, any liability for violating Plaintiff's right to privacy against Defendant Chi Hany, whether under the Fourth or Fourteenth Amendments, will be dismissed with prejudice.

### C. The Eighth Amendment Claims Will Be Dismissed.

Plaintiff raises an Eighth Amendment cruel and unusual punishment claim against Defendants O'Haine, Chi Hany, Ransom, and McKeown.  (Doc. 26, pp. 5, 11–12.)  The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only

conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell*, 833 F.3d at 335).  Such a claim contains two requirements: an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A prisoner asserting a claim that conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk."  *Farmer*, 511 U.S. at 834, 844–45.

Here, the amended complaint fails to allege the objective requirement of a cruel and unusual punishment claim: that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.  Instead, it merely alleges that he unfairly spent fifteen days in the disciplinary confinements and fifteen days on

18

cell restriction.  (Doc. 26.)  Nothing in the complaint addresses the conditions of

his confinement.  Therefore, the cruel and unusual punishment claim will be

dismissed without prejudice.

### D. The Fourteenth Amendment Due Process Claims Will Be Dismissed, and the Right to Privacy Claim Against Defendant O'Haine Will Not Be Dismissed.

The crux of Plaintiff's Fourteenth Amendment claims is that he was denied

due process of law in the course of the misconduct hearing and subsequent appeals.

(Doc. 26, pp. 5, 11–12.)

The Fourteenth Amendment provides, in pertinent part, that no State shall

"deprive any person of life, liberty, or property, without due process of law[.]"  *See*

U.S. Const. amend. XIV.  "[I]nmates are generally not entitled to procedural due

process in prison disciplinary hearings because the sanctions resulting from those

hearings do not usually affect a protected liberty interest."  *Burns v. Pennsylvania*

*Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011).  Therefore, the Fourteenth

Amendment claims associated with the misconduct hearing will be dismissed with

prejudice.

However, as discussed at length above, Plaintiff repeatedly attempts to bring

a claim that Defendant O'Haine violated his constitutional right to privacy under

the Fourth Amendment and as a violation of HIPAA.  While these are not the

correct vehicles to assert a violation of privacy claim under § 1983, the court will

liberally construe the amended complaint as raising a Fourteenth Amendment claim against Defendant O'Haine for the alleged reading of Plaintiff's medical records.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.  The First Amendment retaliation and Fourteenth Amendment privacy claims against Defendant O'Haine will survive Defendants' Rule 12(b)(6) challenge.  The remaining claims will be dismissed.

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Plaintiff will be granted leave to file a second amended complaint if he so desires, but he must clearly label the document as his second amended complaint and use the docket number assigned to this case.  Plaintiff is cautioned that any second amended complaint must stand alone and plead all claims he hopes to raise, including those that survived Defendants' instant motion and those that were dismissed without prejudice.  Should Plaintiff fail to timely file an amended complaint within thirty days, the case will proceed solely on the First and Fourteenth Amendment claims against Defendant O'Haine.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  December 1, 2023